State v. Labuwi, 172 Wis. 204.

STATE, Plaintiff in error, vs. LABUWI, Defendant in error.

*June 5—July 3, 1920.*

*Criminal law: Obtaining money under false pretenses: Declarations of co-conspirators: Admissibility against one: Sufficiency of evidence: New trial: Order proper although based on an erroneous reason: Effect on appeal.*

1. Where defendant and others entered into a conspiracy to hold a Fourth of July celebration and falsely represented that the proceeds of the celebration would be turned over to the American Red Cross Association, declarations of the other co-conspirators, made prior to the division of the money, were admissible against defendant on trial for obtaining money under false pretenses.

2. An order granting defendant a new trial after conviction should not be set aside, although given for an erroneous reason, if a new trial should have been ordered for any of the reasons assigned in the motion therefor.

3. The evidence in this case, although circumstantial, is *held* to show beyond a reasonable doubt that more than $100 was received from people who patronized the celebration because of the false representations, so as to make applicable the greater penalty provided for by sec. 4423, Stats.

ERROR to review an order of the circuit court for Dodge county: MARTIN L. LUECK, Circuit Judge. *Reversed.*

The defendant in error, hereinafter referred to as the defendant, was informed against for, and convicted of, obtain-

State v. Labuwi, 172 Wis. 204.

ing money under false pretenses. The defendant advertised, managed, and conducted a celebration in the village of Neosho on the 4th day of July, 1917, jointly with one August Nell and Mary Franke. The advertising announcements of the celebration, in the form of bills, posters, and newspaper notices, stated that the proceeds of the celebration would be turned over to the American Red Cross Association. After a verdict of guilty had been returned, the defendant moved the court, upon the minutes of the judge, that the verdict be set aside and a new trial granted, for various reasons, the material ones of which will be referred to in the opinion. The court set aside the verdict and granted a new trial, for the reason, as plainly appears from his written opinion, that error was committed in receiving the testimony of admissions made by the co-conspirators of the defendant, August Nell and Mary Franke, subsequent to the time when the court held that the conspiracy had been consummated. The state appealed from the order granting a new trial, under the provisions of sec. 4724a, Stats.

For the plaintiff in error there was a brief by the *Attorney General, J. F. Baker,* assistant attorney general, and *C. A. Markham,* special district attorney for Dodge county; and the cause was argued orally by *Mr. Baker* and *Mr. Markham.*

For the defendant in error there was a brief by *C. M. Davison* of Beaver Dam and *G. A. Hartmann* of Juneau, attorneys, and *Frank T. Boesel* of Milwaukee, of counsel; and the cause was argued orally by *Mr. Boesel.*

OWEN, J. The circumstances out of which this prosecution arises may be stated briefly as follows: The defendant, August Nell, and Mary Franke associated themselves together for the purpose of managing and conducting a Fourth of July celebration at the village of Neosho in 1917. They advertised that the celebration was to be given for the benefit of the American Red Cross Association. The cele-

bration attracted a great concourse of people. An admission fee was charged, lunch and refreshment stands were conducted, and the attractions of the ordinary Fourth of July celebration were provided. The evidence disclosed that a great number of people were induced to attend this celebration for the very reason that they believed that it was held for the benefit of the Red Cross Association and that by patronizing the celebration they would be helping the association. It appears that a considerable sum of money was realized by the promoters, who failed to account to the Red Cross Association for any part of the proceeds or profits of the venture.

The defendant *Labuwi* was arrested on a warrant charging him with obtaining money under false pretenses by reason of the facts above set forth. By the institution of *habeas corpus* proceedings he raised the question of whether the facts above set forth were sufficient to constitute the offense of obtaining money under false pretenses, and this court ruled in the affirmative upon that question. *State ex rel. Labuwi v. Hathaway,* 168 Wis. 518, 170 N. W. 654.

Upon the trial the state introduced in evidence testimony given by August Nell and Mary Franke upon the so-called John Doe hearing, held January 25, 1918, before J. D. Lyons, justice of the peace, in the village of Neosho. The reception of this evidence by the court was assigned as ground for a new trial. The trial judge concluded that the reception of this evidence constituted error because the statements were made after the purpose of the illegal combination had been accomplished. He held that there was competent evidence in the case upon which a finding might be based that a conspiracy had been entered into and that the declarations were voluntary within the meaning of that term as defined in the law. This appeal, therefore, presents the question of whether the purpose of the illegal combination had been accomplished at the time the statements of the co-conspirators received in evidence were made. A perusal

of the defendant's own evidence leaves no doubt that the defendant, Nell, and Franke associated themselves together for the purpose of holding the celebration for their joint benefit and that each was to share equally in the proceeds of the venture. It is also plain from the evidence of the defendant that at the time of the trial there had been no division, especially no final division, of the proceeds among the three. The trial judge was of the opinion that the purpose of the conspiracy had been accomplished as soon as the celebration was over. Upon this theory he was no doubt correct in concluding that the statements made by the co-conspirators some six months thereafter were inadmissible. It is only the declarations of co-conspirators made while the conspiracy is pending and in furtherance of or with reference to the common design that are admissible against all. At the time the statements of the co-conspirators introduced in evidence were made, January 25, 1918, the Fourth of July celebration had been terminated. This part of the conspiracy had been accomplished, but there had been no division of the proceeds thereof between the conspirators.

In *Baker v. State,* 80 Wis. 416 (50 N. W. 518), at p. 422, it is said:

"A conspiracy to commit an assault or a murder would, of course, be ended when the assault or murder was committed; but a conspiracy to steal money and divide the proceeds is plainly not at an end until the division takes place, and this view is supported by authority."

In that case Baker and Perrin were prosecuted for the larceny of $39,000 from the vault of a bank. The evidence tended to show that the arrangement between Baker and Perrin with reference to the disposal of the moneys and drafts found on Baker, and which the state claimed was a part of the money stolen, had not terminated; that there was still something to be done by Baker with the drafts found on him for Perrin's benefit. The court said:

"If this be true, . . . then it is manifest that the objects

of the conspiracy were not fully accomplished at the time of Baker's arrest. The conspiracy, if there was one, was still pending. Under these views of the law, it is obvious that the evidence as to Perrin's conversation with Lyon, as to when the mining company expected to have its pay-day, was admissible; also the evidence as to conduct and exclamations of Perrin on the night of the larceny, and with reference thereto; also his expenditures of money after the larceny; also his conduct at Paeske's store, on the evening of the larceny."

We perceive no distinction between the two cases in this respect, and it seems clear that the statements of the co-conspirators here, received in evidence, were properly admitted, for the reason that the conspiracy had not been terminated. The proceeds thereof had not been divided. The trial court, therefore, set aside the verdict and granted a new trial upon a misunderstanding of the law applicable to the situation.

Defendant contends that even though a new trial should not be granted for the reason stated by the trial judge, nevertheless, if there was a mistrial for other reasons assigned upon the motion for a new trial, the order granting a new trial should not be reversed because the court was in error in granting the motion upon the ground specified. We think this is a correct view of the law, and that if a new trial should have been ordered for any of the reasons assigned as grounds therefor upon the motion made in the lower court the order should not be reversed. We have therefore examined the other reasons assigned as grounds for a new trial in the lower court. We think that but one merits discussion here.

The jury by its verdict found that the amount of money obtained by the false pretenses was $1,350. The question as to the amount of money received by virtue of the false and fraudulent representations is material only because the statute, sec. 4423, prescribes a greater penalty where the money so obtained exceeds $100. The exact amount received is immaterial. The material question is whether the

amount received was in excess of $100. The state pro-
duced a number of witnesses who testified that they were in-
duced to attend the celebration because they supposed it was
intended for the benefit of the Red Cross and that by their
patronage thereof they would be helping a worthy cause.
It is admitted in defendant's brief that the testimony of these
witnesses shows that they spent the aggregate sum of $53.25
at the celebration.. The defendant, to meet this evidence,
produced twelve witnesses who testified that they attended
the celebration, but that in doing so they were not actuated
by the representation that the celebration was being con-
ducted for the benefit of the Red Cross. It may be con-
ceded that there is no direct evidence supporting the verdict
of the jury with reference to the amount fraudulently ob-
tained. The question arises whether, under the circum-
stances of this case, such direct and positive proof of the
amount of money received is necessary. The question nat-
urally arises, Why may not this fact, as well as any other
fact in a criminal prosecution, be proved by circumstantial
evidence? When it is reflected that the celebration was
patronized by many hundred people, the practical impossibil-
ity of calling every person so attending, or any considerable
number thereof, for the purpose of showing whether or not
they were induced to attend the celebration by the false
representation, and the amount of money spent thereat by
each person so attending, or any considerable number of
them, is apparent. The material question is whether the
defendant and his co-conspirators obtained more than $100
by reason of the false and fraudulent representations. It
is not necessary that there be evidence in the record to sup-
port the exact amount found by the jury. The question
rather is, Is the evidence, taken as a whole, convincing be-
yond reasonable doubt that the amount received exceeded
the sum of $100?

The celebration was held at a time when the patriotic in-
stincts of the people were thoroughly aroused. The associa-

tion of the Red Cross was doing a grand work in connection with the prosecution of the war and its achievements were generally applauded. People responded generously to its every appeal for funds, and there can be no doubt that this was the very reason for the representations made by the defendant and his associates that the proceeds of this celebration would be paid to the American Red Cross Association. As stated by the learned trial judge in his opinion:

"It was proper [for the jury] to consider the advertised purpose of the celebration, the evidence as to the number of people in attendance and the gross receipts, the fact that the country was at war and the work of the Red Cross, the probable effect upon the ordinary person of an appeal to patriotism at such a time, as well as what was stated by witnesses who, in giving their reasons for attending the celebration, said they were or were not influenced by the advertisements that the proceeds would go to the Red Cross."

A number of witnesses, not exceeding ten, were called by the state to testify that they patronized the celebration because of these considerations, and they expended in the aggregate the sum of $53.25. We think that the inference is beyond reasonable doubt that more than $100 was received from the vast number of people who patronized the celebration because of the false and fraudulent representations. The evidence, though circumstantial, is strong and convincing.

We think the verdict of the jury is supported by the evidence, was not induced by material error, and that it should stand.

*By the Court.*—Order appealed from is reversed, and cause remanded with directions to enter judgment upon the verdict.

ESCHWEILER, J., dissents.