LOGAN, Plaintiff in error, v. STATE, Defendant in error.

*No. State 125. Argued April 3, 1969.—Decided June 6, 1969.*
(Also reported in 168 N. W. 2d 171.)

130

For the plaintiff in error there was a brief by *Brown, Black & Riegelman* and *Dexter D. Black,* all of Racine, and oral argument by *Dexter D. Black.*

For the defendant in error the cause was argued by *Betty R. Brown,* assistant attorney general, with whom on the brief were *Robert W. Warren,* attorney general, *William A. Platz,* assistant attorney general, and *Gerald E. Clickner,* district attorney of Racine county.

HEFFERNAN, J.   Where a writ of error is taken from an order denying a new trial, the question to be resolved by this court is whether the trial judge abused his discretion in denying the motion. *State v. Waters* (1965), 28 Wis. 2d 148, 152, 153, 135 N. W. 2d 768; *State v. Bidwell* (1930), 201 Wis. 210, 212, 229 N. W. 633.

The defendant on this writ of error and on the motion before the trial court argued that the court abused its discretion inasmuch as the court committed a legal error when it sustained an objection to Larry Logan's testimony as alibi, when it was in fact merely testimony that was corroborative of the defendant's version of the incident.

At the trial, the defense counsel called the defendant's brother Larry to the stand.  He had Larry testify about his activities and those of his brother, the defendant, during the early part of the evening, June 17th, prior to any meeting with the alleged victim, Gil Rendon.  At the time Larry began testifying in detail about the fight with Max Segura, the district attorney objected, stating:

"If this witness is here to testify that on June 17, 1966, this defendant, the brother of this witness was not out in

the country with Gil Rendon, but rather was with him, then this is alibi and 955.07 is clear that this is certainly not timely to plead alibi. Therefore this witness would be precluded from testifying . . . ."

The court asked the defense counsel to explain the purpose of the proposed testimony. He responded by stating that the testimony was merely preliminary. Thereafter, the court generally advised counsel of the necessity of complying with sec. 955.07, Stats., if an alibi witness were to be used. The following exchange followed:

"*The Court:* Is it your purpose to tie this testimony up?

"*Mr. Monson:* Yes, it is, Your Honor, it is, and excuse me if I might add, if the district attorney objects to the use of alibi witnesses, I will certainly withdraw him.

"*The Court:* It isn't a question of objecting, it is a question of fairness.

"*Mr. Monson:* Yes, sir.

"*The Court:* Now I'm going to direct your attention—

"*Mr. Monson:* Yes, sir. I'm—

"*The Court:* —to 955.07 of the statute.

"*Mr. Monson:* Yes, sir, I'm well aware of it.

"*The Court:* Yes. Do you agree, there is no notice of it?

"*Mr. Monson:* I agree, Your Honor, and I will certainly withdraw the witness if you wish.

". . .

"*The Court:* All right, then I understand you are not requesting this right to introduce his testimony?

"*Mr. Monson:* Well, Your Honor, I agree that I have not given the district attorney notice. I have called the witness only as corroboration, and if there is objection to his presence—"

After the trial court explained the alibi statute further, defense counsel elected to proceed with his questioning of Larry Logan. The district attorney made further objections, and defense counsel pointed out that the purpose of the testimony was corroboration. Then, after further questions of a preliminary nature, this question was asked:

"*Q.* Okay. Where—Do you know the route that was taken from your sister's house—

"*A.* No, I don't. I know it was never out of town, never.

"*Mr. Clickner:* Objected to.

"*Mr. Monson:* Yes, this is alibi."

After further colloquy between counsel and the court, defense counsel stated that the entire remainder of his questions would be in the realm of alibi; and, in response to a specific question by the trial judge, defense counsel elected to terminate the examination of the witness.

Following trial, and for the court's consideration on a motion for a new trial, affidavits were submitted by Attorney David Monson, defendant's counsel in the trial, and by his brother, Larry Logan. These affidavits make it clear that, had Logan been permitted to testify, he would have stated that, although the defendant Donald Logan was at the places testified to by the complaining witness Rendon, his conduct was not that described by the complaining witness but was that as substantially described by the defendant at trial.

The testimony was not of an alibi nature but was corroborative of the defendant's version of what happened. The word, "alibi," is merely a shorthand method of describing a defense based on the fact that the accused was elsewhere at the time the alleged incident took place. The word, "alibi," is simply the Latin word for "elsewhere." Cassell's *New Latin Dictionary* (Funk & Wagnall, 1960). A defense which admits the accused's presence at the scene of the crime but disputes his guilt is not alibi. 1 Wharton, *Criminal Law* (Anderson, 12th ed., 1957), p. 260, sec. 121, states:

"When properly defined so as to exclude any element of participation by the defendant, the corpus delicti is not denied by the defense of alibi. Its only design is to prove that the defendant, being in another place at the time, could not have commited the offense charged."

1 Wharton, *Criminal Evidence* (Anderson, 12th ed., 1955), p. 432, sec. 212, points out that alibi is established by "Anything which tends to show the absence of the defendant from the scene of the crime at the time when it was committed . . . ."

Alibi defenses have recently been considered by this court in *State v. Grahn* (1963), 21 Wis. 2d 49, 123 N. W. 2d 510, and *Jensen v. State* (1967), 36 Wis. 2d 598, 153 N. W. 2d 566, 154 N. W. 2d 769.

It is clear, when the testimony is viewed as a whole, that the defense counsel was uncertain as to the exact nature of an alibi defense. While it is very clear that the trial court understood the proper rule of law, defense counsel did not, and the elicitation of all the testimony of Larry Logan in an offer of proof would have revealed to the trial judge that the testimony was not alibi.

We therefore conclude that, under the circumstances of this case, the testimony of Larry Logan would have been admissible and counsel's failure to spread such testimony on the record was prejudicial to the defendant.

As the trial judge pointed out in his memorandum, the principal question presented to the trier of the fact was the credibility of the two opposing witnesses. Had Larry Logan's testimony, corroborative of his brother's version of the incident, been placed in evidence, the credibility of the accused's testimony would have been substantially enhanced. Of course, the trial judge would not have been obliged to believe the defendant's story no matter how many corroborating witnesses appeared, but the testimony omitted from the record should have been considered in weighing the respective credibility of witnesses. In the case of *State v. Baker* (1962), 16 Wis. 2d 364, 114 N. W. 2d 426, we pointed out the prejudicial result of the excluding of testimony that affected the reputation for veracity of a witness when the veracity and credibility of that witness was the major factor in the determination of guilt or innocence. The crucial nature of credibility in

this case was recognized in the memorandum opinion prepared by the trial judge, in which he stated:

"The testimony of the defendant is not credible, is not believable insofar as it will be accepted as proof contradictory to the testimony offered by Gil Rendon . . . ."

We conclude, therefore, that the defendant was prejudiced by the failure to have this highly relevant testimony of Larry placed in evidence. We cannot conclude, however, that the trial judge committed error. The record clearly reveals that the judge did not exclude the proffered testimony. It was trial counsel who elected not to proceed and withdrew the witness. It was because of his failure to make clear that the testimony that he offered was corroborative and not alibi that the evidence of Larry Logan was not presented. Had trial counsel properly understood the nature of the testimony and the nature of the trial judge's explanation, he would no doubt have made an offer of proof so that the trial judge could have ruled definitively on the admissibility of the evidence, and also counsel properly could have preserved his objection. We are satisfied that counsel's confusion resulted in the omission of highly probative evidence, which, if believed, could have materially altered the result of the trial. It went directly to the crux of the case—the credibility of the defendant as contrasted with the credibility of the complaining witness.

Under these circumstances we conclude, from a review of the entire record, that the controversy was not fully tried. We therefore choose to exercise our discretionary power as set forth in sec. 251.09, Stats., and on this basis we order a new trial.

The defendant also contends that, without his consent, the magistrate adjourned the preliminary hearing for more than ten days and that, hence, the prosecution lost jurisdiction of both the person of the defendant and the subject matter of the defense. The state properly argues

that this point was not raised in the trial court, nor on the motion for a new trial, but was raised for the first time in this court on writ of error. We would, ordinarily, under the rule of *State v. Dunn* (1960), 10 Wis. 2d 447, 464, 103 N. W. 2d 36, decline to consider in this court matters not properly raised below. However, defendant argues that our rule is one of waiver and that, if there is in fact a loss of subject matter jurisdiction, the subsequent proceedings are void. As this court stated in *Pillsbury v. State* (1966), 31 Wis. 2d 87, 94, 142 N. W. 2d 187, "One cannot waive lack of jurisdiction of the subject matter or confer it on a court by consent."

If the magistrate, by failure to hold a timely preliminary proceeding, lost subject matter jurisdiction, the defendant's unobjected appearance before him did not result in a valid binding over to the county court. We are satisfied, however, that the magistrate did not lose subject matter 'jurisdiction of the defendant's offense. In *Pillsbury v. State, supra,* at page 94, we pointed out that:

". . . jurisdiction of the subject matter is a power of a court to inquire into the charge of the crime, to apply the law, and to declare the punishment in the court of a judicial proceeding and is conferred by law."

We conclude that though a magistrate fails to act within the ten days required by statute, he does not lose subject matter jurisdiction. It merely means that the state had no jurisdiction over the person of the defendant at the particular time and place unless the objection to such jurisdiction was waived. As we pointed out in *State ex rel. Klinkiewicz v. Duffy* (1967), 35 Wis. 2d 369, 375, 151 N. W. 2d 63:

". . . if . . . a magistrate adjourns a preliminary examination for more than ten days without the consent of the accused, the magistrate loses jurisdiction. [However] . . . the state [is not precluded] from initiating a new prosecution for the same offense . . . ."

In *Pillsbury, supra,* we also pointed out that the right to a preliminary examination is statutory, not constitutional, and that, although due to a failure to act in a timely manner, the magistrate has lost his jurisdiction over the defendant to lawfully bind him over to the trial court, once the defendant appears before the trial court without objection to the bindover, there is a waiver to any defects in the proceedings of the preliminary examination. We pointed out in *Pillsbury* that, even where there was a bindover on an improper complaint or on an offense not complained about, nevertheless this defect did not vitiate the conviction of the defendant. This court held, "Such defect would only go to the validity of the preliminary examination," which could properly be waived.

It thus appears clear, in accordance with the rationale of *State ex rel. La Follette v. Raskin* (1966), 30 Wis. 2d 39, 139 N. W. 2d 667, objection to lack of jurisdiction was waived when the defendant pleaded without objection to the information. While, under the rules of the cases cited herein; he might have timely made a proper motion, secured a dismissal of the charges against him because of the failure to hold a preliminary examination within the time required by statute, he could have been recharged and, under the proper procedure, again be brought by the state to arraignment before the trial court. It is thus abundantly clear that the failure of the state to hold the preliminary examination as required by sec. 954.05 (1), Stats., does not deprive it of subject matter jurisdiction in the usual sense of the word. If there is not an objection to the omission of these required procedural steps prior to arraignment, the state may in the exercise of jurisdiction over both the person of the defendant and the subject matter of the offense proceed to trial and ultimate judgment.

*By the Court.*—Order reversed, and cause is remanded for a new trial.